LYNNE C. HERMLE (STATE BAR NO. 99779)
lchermle@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:     650 614 7400
Facsimile:      650 614 7401

TIMOTHY B. DEL CASTILLO (STATE BAR NO. 277296)
tdelcastillo@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, CA  95814-4497
Telephone:     916 447 9200
Facsimile:      916 329 4900

Attorneys for Defendant
GENENTECH, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY PRUITT,<br><br>                    Plaintiff,<br><br>          v.<br><br>GENENTECH, INC.; & DOES 1 THROUGH 10, INCLUSIVE,<br><br>                    Defendants. | Case No.<br><br>**NOTICE OF REMOVAL BY DEFENDANT GENENTECH, INC.** |

TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331 and 1441, Defendant Genentech, Inc. hereby removes the above-captioned action from the Superior Court of the State of California, County of Solano to this Court, based on the following grounds:

## I.  BACKGROUND

1.  On March 10, 2017, in the Superior Court of California, in and for the County of Solano, Plaintiff Timothy Pruitt commenced an action entitled "*Timothy Pruitt, Plaintiff, v. Genentech, Inc., and Does 1-10*, Defendants, Case No. FCS048528 ("the Action")."  Genentech was served with a copy of the Complaint on March 20, 2017.  A true copy of the Complaint is attached to this notice as **Exhibit A**.

2.  No other pleadings have been filed or served in the Action.

## II.  JURISDICTION/GROUNDS FOR REMOVAL

3.  Genentech removes this action to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331.

4.  This Court has federal question jurisdiction in this case based on the following facts:  Plaintiff bases his seventh, eighth, and ninth causes of action on the Family Medical Leave Act, 29 U.S.C. § 2615 (a)(1) ("FMLA"), a federal statute.  Plaintiff's seventh cause of action alleges interference with FMLA rights; his eighth alleges retaliation under FMLA, and his ninth asserts wrongful discharge, relying, among other statutes, on the FMLA.

5.  This Action is subject to removal pursuant to 28 U.S.C. § 1441(b) because Plaintiff's right to relief necessarily depends on resolution of substantial questions of federal law.  Thus, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

6.  This is a civil action of which the district courts have original jurisdiction on a claim arising under the laws of the United States, which is removable without regard to the citizenship or residence of the parties.

///

///

7.      The non-federal claims in the Action arise from the same case and controversy as the federal claim and thus are within this Court's supplemental jurisdiction, *see* 28 U.S.C. § 1367, or in the alternative, are within this Court's jurisdiction pursuant to 28 U.S.C. § 1441(c).

8.      The removal is timely under 28 U.S.C. §1446(b) because this Notice is filed within 30 days after service of a copy of the Complaint.

9.      Venue lies in the Eastern District of California pursuant to 28 U.S.C. §§ 1441(a), 1446(a), and 84(a).  This action was originally brought in the Superior Court of the State of California, County of Solano, which is embraced by the Eastern District of California.

10.     This Court therefore has original jurisdiction over this Action pursuant to 28 U.S.C. §§ 1331, 1367 and 1441(c) and this Action may be removed to this Court pursuant to 28 U.S.C. § 1441(a), (b), and (c).

## III.    NOTICE OF REMOVAL

11.     This Notice of Removal shall be served promptly on the Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of Solano.

12.     In compliance with 28 U.S.C. § 1446(a), attached hereto as Exhibit A are copies of the state-court papers served herein, including the summons and Complaint.

13.     WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of Solano to the United States District Court for the Eastern District of California.

Dated: April 19, 2017.                          LYNNE C. HERMLE
                                                TIMOTHY B. DEL CASTILLO
                                                Orrick, Herrington & Sutcliffe LLP


                                                By: _____/s/ Timothy Del Castillo_____
                                                     TIMOTHY B. DEL CASTILLO
                                                     Attorneys for Defendant
                                                     GENENTECH, INC.

# EXHIBIT A

1  Aaron P. Minnis, Esq. (SBN202935)
2  Sonya L. Smallets, Esq. (SBN226190)
   Sean D. McHenry, Esq. (SBN284175)
3  MINNIS & SMALLETS LLP
   369 Pine Street, Suite 500
4  San Francisco, California 94104
   T: (415) 551-0885
5  F: (415) 683-7157
   E: aaron@minnisandsmallets.com
6  Attorneys for Plaintiff
7  TIMOTHY PRUITT

**FILED**
Clerk of the Superior Court

MAR 1 0 2017 GH

By _G. Cute_
DEPUTY CLERK
#435-CMFF 315 480

By Fax

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF SOLANO—UNLIMITED JURISDICTION

10

11  TIMOTHY PRUITT,                     Case No.:    **FCS048528**

12

13                                      **COMPLAINT FOR DAMAGES**

14          Plaintiff,

15                                      (1)  Disability Discrimination in
                                             Violation of FEHA
16  vs.                                 (2)  Race Discrimination in Violation
                                             of FEHA
17                                      (3)  Retaliation in Violation of FEHA
                                        (4)  Violation of Labor Code Section
18  GENENTECH, INC.; & DOES 1                1102.5
    THROUGH 10, INCLUSIVE,             (5)  Interference in Violation of
19                                           CRFA
                                        (6)  Retaliation in Violation of CFRA
20                                      (7)  Interference in Violation of
                                             FMLA
21          Defendants.                 (8)  Retaliation in Violation of FMLA
                                        (9)  Wrongful Termination in
22                                           Violation of Public Policy
                                        (10) Defamation
23

24                                      Jury Trial Demanded

25

26                                      ASSIGNED TO
                                        JUDGE __SCOTT L. KAYS__
27
                                        FOR ALL PURPOSES
28

-1-

EXHIBIT A

1     COMES NOW plaintiff TIMOTHY PRUITT for causes of action, and
2 alleges as follows:

### I. ALLEGATIONS

4     1.    Plaintiff TIMOTHY PRUITT at all relevant times was an employee
5 of Defendant Genentech.

6     2.    Defendant GENENTECH, INC. is a Delaware Corporation with its
7 principal place of business located in San Mateo County. Defendant operates
8 a facility in Vacaville, California, in Solano County, where Plaintiff worked.
9 At all relevant times, Genentech was Plaintiff's employer.

10     3.    The true names and capacities, whether individual, corporate or
11 otherwise, of DOES 1 through 10 are at this time unknown to plaintiff, who
12 therefore sues said defendants by such fictitious names. Plaintiff will ask
13 leave to amend this claim for damages to reflect their true names and
14 capacities when the same have been ascertained. Plaintiff is informed and
15 believes, and thereon alleges, that each of said defendants is responsible,
16 jointly and severally, for the events and injuries described herein and
17 caused damages thereby as alleged herein.

18     4.    Plaintiff is informed and believes, and thereon alleges, that at all
19 times mentioned herein each and every co-defendant was and is the
20 predecessor-in-interest, successor-in-interest, agent, counselor, employee,
21 servant, partner, franchisee and/or joint venturer of each of other co-
22 defendant, and in doing the actions hereinafter mentioned, was and/or is
23 acting within the scope of its authority within such agency, employment,
24 counseling, service, partnership, franchise and/or joint venture or single
25 enterprise, and with the permission and consent of each co-defendant.
26 Plaintiff alleges that each of said defendants is responsible, jointly and
27 severally, for the events and injuries described herein and caused damages
28 thereby to plaintiff as alleged herein.

-2-

EXHIBIT A

1     5.     Mr. Pruitt is an experienced Information Technology (IT)
2  technician. He has over 20 years' experience providing technical customer
3  support in large and small enterprises. Mr. Pruitt is African-American.

4     6.     Genentech is a biotechnology corporation that develops and
5  manufactures medicines. Genentech is headquartered in South San
6  Francisco with several manufacturing facilities throughout the West Coast.
7  Genentech operates a facility in Vacaville, California, where it employs
8  several hundred employees.

9     7.     In 1994, Mr. Pruitt began working for Genentech as an IT
10  contractor. In 1998, Genentech hired Mr. Pruitt as a full-time employee at
11  its facility in Vacaville, California. Mr. Pruitt reported to IT Manager Dan
12  Williams.

13     8.     Mr. Pruitt performed well at Genentech and earned positive
14  performance evaluations and customer feedback over the next several
15  years. For example: "Tim's customer service skills are very impressive. He
16  is always courteous to users. He takes a personal approach to helping
17  people. If the user is having a problem, Tim makes it his problem."; "Tim's
18  always friendly and easy to approach. He doesn't seem to tire of people
19  when they stop him anywhere and just start asking him questions. I
20  personally can get very cranky when this happens to me, but he just kind of
21  'rolls' with it."; "Tim is a good listener. Most times I have difficulty
22  explaining to Tim what my problems are -- I'm not that technical and call
23  alot [sic] of things 'thingies', but Tim has the patience to deal with me and
24  he can always solve my problems I'm encountering."; "By performing the
25  memory installation procedure into a new computer himself, Tim has saved
26  Genentech $8000 this year."; "Tim is patient, and shows empathy for the
27  end user's problems/issues."; "Tim effectively listens to what the users are
28  ///

-3-

EXHIBIT A

1  telling him and he is able to see the big picture and prioritize accordingly.
2  He's very good at explaining technical issues to non-technical people."

3      9.    However,    despite    Mr.    Pruitt's    consistently    excellent
4  performance, Genentech did not promote him. In 2001, Mr. Pruitt raised
5  this issue to the Senior Director Production Services, who shared Mr. Pruitt's
6  belief that he should have been promoted, and told Mr. Williams to promote
7  Mr. Pruitt. Mr. Williams, who is white, was unhappy about this, and insisted
8  that Mr. Pruitt state in writing why he should be promoted to a Level E2,
9  which Mr. Pruitt provided. Mr. Williams then promoted Mr. Pruitt as
10 instructed.

11     10.   Over the next 10 years, Mr. Pruitt continued to perform well in
12 his position, as shown by his performance ratings and peer feedback.
13 However, despite his performance, Genentech did not elevate Mr. Pruitt
14 from Level E2 to Level E3.

15     11.   On September 18, 2012, Mr. Williams unexpectedly presented
16 Mr. Pruitt with a performance counseling document. It stated that Mr.
17 Pruitt's customer service and technical skills were supposedly poor. Mr.
18 Pruitt disputed this. Mr. Pruitt was providing the same high level of
19 customer and technical service that he had been providing since Genentech
20 hired him. In fact, during the same period, Mr. Pruitt received several merit
21 certificates acknowledging his performance in customer service. Mr. Pruitt
22 told Genentech's human resources representative that the criticism set forth
23 in the counseling document was unjustified and unfair, and that he felt Mr.
24 Williams was holding him to a different standard based on his race. Mr.
25 Pruitt also pointed out that Mr. Williams had not promoted him after 10
26 years of good performance.

27     12.   On December 12, 2012, the company notified Mr. Pruitt that his
28 discrimination complaint was supposedly unsubstantiated. However, on

-4-

COMPLAINT FOR DAMAGES

EXHIBIT A

1   March 6, 2013, another human resources employee directed Mr. Williams to
2   amend the performance counseling document, which he did. Mr. Williams
3   removed criticisms of Mr. Pruitt's technical skills on Apple products, because
4   he had denied Mr. Pruitt's requests for training on those systems. Mr.
5   Williams also removed his claim that he had counseled Mr. Pruitt on these
6   issues "[o]ver the last seven months," which was untrue.

7       13.   After Mr. Pruitt complained about race discrimination, Mr.
8   Williams presented Mr. Pruitt with a negative performance evaluation. Mr.
9   Williams rated Mr. Pruitt's performance as "partially meets," the lowest
10  rating of his career at Genentech. The performance evaluation contained
11  many of the same criticisms of Mr. Pruitt's communication skills as the
12  counseling document, which Mr. Williams was told to revise. Mr. Williams'
13  critique of Mr. Pruitt was again inconsistent with the fact that Mr. Pruitt was
14  given several awards that same year, and had achieved high scores in
15  customer satisfaction surveys. Mr. Williams' unfair rating of Mr. Pruitt's
16  performance, in turn, adversely affected Mr. Pruitt's bonus calculation and
17  stock option compensation for the year. Mr. Pruitt expressed his concern to
18  human resources that the performance review was in retaliation for his prior
19  discrimination complaint against Mr. Williams. However, as far as Mr. Pruitt
20  was made aware, the company did not take any action in response to his
21  complaint.

22      14.   Around this time, Mr. Pruitt began suffering from a mental
23  health condition that affected his ability to sleep and work, which led him to
24  seek treatment from a mental healthcare provider.

25      15.   In May 2013, Mr. Pruitt's doctor advised Mr. Pruitt to take a
26  medical leave of absence.  Mr. Pruitt requested and took an FMLA leave of
27  absence from May 2013 to July 2013.
28  ///

EXHIBIT A

1      16.   On August 29, 2013, after Mr. Pruitt returned from medical
2   leave, Mr. Williams provided Mr. Pruitt with a mid-year review that was
3   critical of Mr. Pruitt's performance. Mr. Williams had never given Mr. Pruitt a
4   mid-year review before, and the review included the period of time that Mr.
5   Pruitt was on protected medical leave. Mr. Pruitt disagreed with Mr.
6   Williams' comments and prepared a rebuttal, which he provided to human
7   resources. However, Genentech took no action in response to this situation.
8   Notwithstanding Mr. Williams' unfair evaluation of Mr. Pruitt and the
9   company's failure to address it, Mr. Pruitt's performance continued to meet
10  expectations, as shown by positive feedback he received in 2013 and in
11  2014.

12     17.   In about July 2015, the company promoted Mr. Williams to
13  another department. The company hired Steve Graeff to replace Mr.
14  Williams, based on Mr. Williams' recommendation. On information and
15  belief, Mr. Williams and Mr. Graeff were friends and socialized together at
16  work.

17     18.   After July 2015, Mr. Graeff became Mr. Pruitt's direct
18  supervisor. Almost immediately, Mr. Graeff began closely scrutinizing Mr.
19  Pruitt's work. Mr. Graeff frequently came looking for Mr. Pruitt at his desk,
20  followed him around the facility, examined his timecards, and scrutinized
21  his meal and rest breaks.

22     19.   Mr. Graeff he did not behave in a similar manner toward Mr.
23  Pruitt's white coworkers. He allowed Mr. Pruitt's white coworker to come in
24  late or not at all, due to various purported last minute "emergencies." Other
25  employees besides Mr. Pruitt noticed Mr. Graeff's double standard. One
26  contract employee told Mr. Pruitt that he believed that Mr. Graeff was a
27  "racist." Mr. Pruitt was also concerned that Mr. Graeff's perspective of his
28  ///

COMPLAINT FOR DAMAGES

EXHIBIT A

1  performance was tainted by Mr. Graeff's close relationship with Mr.
2  Williams.

3      20.   In about December 2015, Mr. Pruitt applied for an open position
4  that he considered to be a promotion. However, Mr. Graeff promoted a less
5  experienced person who is not African-American.

6      21.   In 2015, Mr. Pruitt earned a positive rating in his annual
7  performance evaluation. Mr. Pruitt exceeded objective measures of his
8  performance, such as successfully resolving 95% of tickets in three business
9  days and achieving a customer satisfaction rating of 4.5 or greater.
10 However, Mr. Graeff's subjective feedback about Mr. Pruitt's performance
11 was mostly negative. For example, Mr. Graeff told Mr. Pruitt to "[t]hink
12 about if you still have the 'Drive' for this job and your role. If you are
13 unhappy with your current role, look for other opportunities."

14     22.   In 2016, Mr. Pruitt's mental health condition worsened. Mr.
15 Pruitt began meeting with his doctor more frequently starting in February
16 2016. When Mr. Pruitt told Mr. Graeff that he would need additional time off
17 to attend these appointments, Mr. Graeff insisted on reviewing all of Mr.
18 Pruitt's sick leave documentation, indicating that he did not trust Mr. Pruitt.

19     23.   From March 27 to May 2, 2016, Mr. Pruitt's doctor placed Mr.
20 Pruitt on a medical leave of absence. The company designated Mr. Pruitt's
21 leave of absence as FMLA-protected leave. When Mr. Pruitt returned from
22 his leave of absence, Mr. Graeff inexplicably changed Mr. Pruitt's schedule
23 to 8am to 5pm, whereas it had been 7am to 4pm for the past 19 years. By
24 doing so, Mr. Graeff made it more difficult for Mr. Pruitt to see his mental
25 healthcare provider, who closed at 5pm. Mr. Graeff also continued to
26 unfairly scrutinize Mr. Pruitt's work. When Mr. Pruitt pointed out that he was
27 being held to a different standard than his white coworker, Mr. Graeff told
28 Mr. Pruitt not to worry about his coworkers.

-7-

COMPLAINT FOR DAMAGES

EXHIBIT A

1       24.   In early June 2016, Mr. Pruitt complained to human resources
2   that he was being discriminated against. Mr. Pruitt told the Senior Manager
3   of Employee Relations that Mr. Graeff subjected his work to more scrutiny
4   and held him to a higher standard than his white coworkers. Although the
5   Senior Manager of Employee Relations gathered some initial information, he
6   did not conduct a follow up interview with Mr. Pruitt. As far as Mr. Pruitt is
7   aware, the Senior Manager of Employee Relations did not interview other
8   employees regarding his complaint.

9       25.   Thereafter, on July 13, 2016, Mr. Graeff asked Mr. Pruitt to
10  work at the company's facility in Dixon to cover for another employee. Mr.
11  Pruitt agreed to do so, but needed to pick up his prescription in Vacaville on
12  his lunch break and was late returning to work due to traffic. Mr. Pruitt also
13  left work early that day because he felt ill. Mr. Pruitt inadvertently failed to
14  account for this on his timecard after he had difficulty submitting his
15  timecard and had to do so again. The company did not pay Mr. Pruitt for
16  hours he did not work.

17      26.   On July 26, 2016, Mr. Graeff met with Mr. Pruitt. Mr. Williams
18  was also present, although he did not explain why. Mr. Graeff notified Mr.
19  Pruitt that effective immediately Mr. Pruitt was suspended. Mr. Graeff told
20  Mr. Pruitt that the reason for his suspension was that Mr. Pruitt had made
21  an error on his timecard for July 13, when Mr. Pruitt had agreed to cover
22  another employee's shift at Mr. Graeff's request and for which Mr. Pruitt
23  experienced difficulty submitting his timecard. Mr. Graeff said that he had
24  come to the Dixon facility that day, but that Mr. Pruitt was not there. Mr.
25  Graeff also accused Mr. Pruitt of stealing a sandwich from the cafeteria. Mr.
26  Pruitt denied this. In fact, a friend had purchased the sandwich for Mr.
27  Pruitt. Mr. Graeff had Mr. Pruitt escorted from the premises.

28  ///

-8-

COMPLAINT FOR DAMAGES

EXHIBIT A

1      27.   The following day, July 27, Mr. Graeff called Mr. Pruitt. He said
2  that Mr. Williams was also in his office. He then notified Mr. Pruitt that his
3  employment was terminated.

4      28.   On the same day, the company provided Mr. Pruitt with a letter
5  stating that his discrimination complaint against Mr. Graeff was
6  unsubstantiated.

7      29.   On information and belief, Genentech investigated Mr. Graeff's
8  claim that Mr. Pruitt stole a sandwich and learned that it was untrue before
9  it terminated Mr. Pruitt. On information and belief, Defendant told several of
10  its employees that it terminated Mr. Pruitt for stealing, which is untrue.

11      30.   Plaintiff timely exhausted his administrative remedies by filing a
12  complaint of discrimination with the Department of Fair Employment and
13  Housing and obtained the right to sue.

14      31.   Defendant's actions were undertaken for improper purposes as
15  alleged above and were willful, oppressive and in conscious disregard of
16  plaintiff's rights, and were designed and intended to cause and did, in fact,
17  cause plaintiff to suffer severe emotional distress, pain and suffering, and
18  substantial economic damage and, therefore, justify the awarding of
19  exemplary and punitive damages.

20      32.   The above allegations are incorporated by reference in each and
21  every cause of action stated below.

22              **II. CAUSES OF ACTION**
23              <u>**FIRST CAUSE OF ACTION**</u>
24        **(Disability Discrimination in Violation of FEHA)**

25      33.   Defendant is an employer within the meaning of FEHA.

26      34.   Plaintiff was an employee of Defendant.

27      35.   Plaintiff has a disability that limits him in a major life activity,
28  including working.

-9-

COMPLAINT FOR DAMAGES

EXHIBIT A

36.   Defendant knew of Plaintiff's disability.

37.   Plaintiff was able to perform the essential functions of his job with reasonable accommodations for his condition.

38.   Defendant terminated and/or failed to promote Plaintiff.

39.   Plaintiff's disability and need for reasonable accommodations was a substantial motivating reason for the termination and/or failure to promote.

40.   Plaintiff was harmed.

41.   Defendant's conduct was a substantial factor in causing Plaintiff's harm.

## SECOND CAUSE OF ACTION

### (Race Discrimination in Violation of FEHA)

42.   Defendant is an employer within the meaning of FEHA.

43.   Plaintiff was an employee of Defendant.

44.   Defendant terminated and/or failed to promote Plaintiff.

45.   Plaintiff's race was a substantial motivating reason for the termination and/or failure to promote.

46.   Plaintiff was harmed.

47.   Defendant's conduct was a substantial factor in causing Plaintiff's harm.

## THIRD CAUSE OF ACTION

### (Retaliation in Violation of FEHA)

48.   Defendant is an employer within the meaning of FEHA.

49.   Plaintiff was an employee of Defendant.

50.   Plaintiff opposed discriminatory activity that he reasonably believed to be unlawful under FEHA and sought reasonable accommodations for his disability.

51.   Defendant terminated Plaintiff.

-10-

EXHIBIT A

52.    Plaintiff's opposition to activity he reasonably believed to be discriminatory and/or Plaintiff's request for reasonable accommodations for his disability was the motivating reason for Defendant's decision to terminate Plaintiff.

53.    Plaintiff was harmed.

### FOURTH CAUSE OF ACTION

### (Violation of Labor Code §1102.5)

54.    Plaintiff was an employee of Defendant.

55.    Plaintiff disclosed information that he had reasonable cause to believe disclosed a violation of, or noncompliance with, federal and state statutes and regulations to a person with authority over him and/or an employee who has the authority to investigate, discover, or correct the violation or noncompliance.

56.    Defendant terminated and/or failed to promote Plaintiff.

57.    Plaintiff's disclosure of information that he had reasonable cause to believe disclosed a violation of, or noncompliance with, federal, and state statutes and regulations to a person with authority over him and/or an employee who has the authority to investigate, discover, or correct the violation or noncompliance was a motivating reason for the termination and/or other adverse actions.

58.    Plaintiff was harmed.

59.    Defendant's conduct was a substantial factor in causing Plaintiff's harm.

### FIFTH CAUSE OF ACTION

### (Interference in Violation of CFRA)

60.    Defendant is an employer covered by CFRA.

61.    Plaintiff suffers from a serious health condition that made him unable to perform the functions of his job.

-11-

EXHIBIT A

62.   Plaintiff was eligible for medical leave under CFRA.

63.   Plaintiff notified Defendant of his serious health condition and his need for medical leave.

64.   Defendant interfered with Plaintiff's CFRA rights.

65.   Plaintiff was harmed.

66.   Defendant's conduct was a substantial factor in causing Plaintiff's harm.

## SIXTH CAUSE OF ACTION

### (Retaliation in Violation of CFRA)

67.   Defendant is an employer covered by CFRA.

68.   Plaintiff was eligible for medical leave under CFRA.

69.   Plaintiff requested and took a medical leave.

70.   Defendant discriminated against and terminated Plaintiff.

71.   Plaintiff's request to take a medical leave and his taking of the medical leave motivated Defendant's decision to terminate and/or discriminate against Plaintiff.

72.   Plaintiff was harmed.

73.   Defendant's retaliatory conduct was a substantial factor in causing Plaintiff's harm.

## SEVENTH CAUSE OF ACTION

### (Interference in Violation of FMLA)

74.   Defendant is an employer covered by FMLA.

75.   Plaintiff suffers from a serious health condition that made him unable to perform the functions of his job.

76.   Plaintiff was eligible for medical leave under the FMLA.

77.   Plaintiff notified Defendant of his serious health condition and his need for medical leave.

78.   Defendant interfered with Plaintiff's FMLA rights.

-12-

EXHIBIT A

1     79.   Plaintiff was harmed.

2     80.   Defendant's conduct was a substantial factor in causing
3  Plaintiff's harm.

## EIGHTH CAUSE OF ACTION

### (Retaliation in Violation of FMLA)

81.   Plaintiff was eligible for medical leave under the FMLA.

82.   Plaintiff requested and took a medical leave.

83.   Defendant discriminated against and terminated Plaintiff.

84.   Plaintiff's request to take a medical leave and his taking of the medical leave was a negative factor in Defendant's decision to terminate and/or discriminate against Plaintiff.

85.   Plaintiff was harmed.

86.   Defendant's retaliatory conduct was a substantial factor in causing Plaintiff's harm.

## NINTH CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy)

87.   Plaintiff was employed by Defendant.

88.   Defendant terminated Plaintiff.

89.   Defendant terminated Plaintiff in violation of FEHA, FMLA, CFRA, and California Labor Code Section 1102.5 which constitutes a termination in violation of public policy.

90.   The termination caused Plaintiff harm.

## TENTH CAUSE OF ACTION

### (Defamation)

91.   Defendant told its employees that Plaintiff stole from its cafeteria.

92.   The people to whom this statement was made reasonably understood that this statement was about Plaintiff.

-13-

EXHIBIT A

1   93.   Further, these people reasonably understood the statement to
2   mean Plaintiff committed a crime, lacked integrity, and showed
3   reprehensible characteristics or behavior.

4   94.   Defendant made this statement maliciously, out of hatred or ill
5   will toward Plaintiff; alternatively, Defendant failed to use reasonable care
6   to determine the truth or falsity of the statement.

7   95.   This statement was a substantial factor in causing harm to
8   Plaintiff's trade, profession, occupation, and/or reputation.

9   **III. PRAYER FOR RELIEF**

10   WHEREFORE, Plaintiff seeks relief as follows:

11   (1)   Economic damages for lost wages, employment benefits, and
12          other compensation as a result of defendant's wrongful conduct,
13          plus interest;

14   (2)   Noneconomic damages for pain and suffering and emotional
15          distress;

16   (3)   Statutory attorney's fees;

17   (4)   Injunctive relief;

18   (5)   Liquidated damages;

19   (6)   Civil penalties;

20   (7)   Assumed damages;

21   (8)   Exemplary damages;

22   (9)   Costs of suit; and

23   (10)   Such other relief as the court deems just.

24   DATED: March 9, 2017                    MINNIS & SMALLETS LLP

25

26                                    by:

27                                          AARON P. MINNIS, ESQ.
                                            Attorneys for Plaintiff
28                                          TIMOTHY PRUITT

-14-

COMPLAINT FOR DAMAGES

EXHIBIT A

SUMMONS
(CITACION JUDICIAL)

**SUM-100**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

NOTICE TO DEFENDANT:
(AVISO AL DEMANDADO):
GENENTECH, INC.; & DOES 1 THROUGH 10, INCLUSIVE

YOU ARE BEING SUED BY PLAINTIFF:
(LO ESTÁ DEMANDANDO EL DEMANDANTE):
TIMOTHY PRUITT

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | CASE NUMBER: (Número del Caso): |
|---|---|
| The name and address of the court is: (El nombre y dirección de la corte es): | **FCS048528** |

Solano County Superior Court
580 Texas Street
Fairfield, CA 94533

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Aaron P. Minnis, Esq.                    (415) 551-0885
MINNIS & SMALLETS LLP
369 Pine Street, Suite 500, San Francisco, CA 94104

| DATE: (Fecha) | MAR 1 0 2017 | Clerk, by (Secretario) | G. Ureta | , Deputy (Adjunto) |
|---|---|---|---|---|

(For proof of service of this summons use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify): Genentech, Inc.
   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Timothy Pruitt v. Genentech, Inc.

EXHIBIT A



**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SOLANO**

**CIVIL DIVISION**

☑ OLD SOLANO COURTHOUSE
580 Texas Street
Fairfield, CA 94533
(707) 207-7330

☐ HALL OF JUSTICE
600 Union Avenue
Fairfield, CA 94533
(707) 207-7330

---

Plaintiff(s): TIMOTHY PRUITT

Defendant(s): GENENTECH, INC.

Case No. FCS048528

**NOTICE OF CASE MANAGEMENT
CONFERENCE ONE
AND
NOTICE OF ASSIGNMENT OF
JUDGE FOR ALL PURPOSES**

---

**PURSUANT TO LOCAL RULES AND BY ORDER OF THIS COURT, THIS MATTER HAS BEEN
CALENDARED FOR CASE MANAGEMENT CONFERENCE ONE:**

Date: JUNE 30, 2017                        Time: 8:30 a.m.

**THIS MATTER HAS BEEN ASSIGNED FOR ALL PURPOSES TO:** Judge Scott L. Kays, Department 16

**ALL HEARINGS WILL BE HELD AT:** 580 Texas Street, Fairfield, California 94533

---

The obligations of counsel, or any party not represented by an attorney, in regard to Case Management
Conference One and any Case Management Conference Two set by the court are as follows:

1.   Service of the complaint must be within sixty (60) calendar days of the date of filing.

2.   Service and filing of any responsive pleadings must be within thirty (30) days after service of the
complaint. The time for filing responsive pleadings may not be extended except as authorized by law.
Appearance at the Case Management Conference does not excuse a litigant from the requirement of filing and
serving a responsive pleading within this deadline.

3.   Plaintiff shall serve a copy of this *Notice of Case Management Conference One and Notice of Assignment
of Judge for All Purposes ("Notice of CMC One")* on all defendants with the complaint.

4.   Any party serving a cross-complaint shall serve a copy of this *Notice of CMC One* on each cross-
defendant with the cross-complaint.

5.   Any cross-complaint served after Case Management Conference One has been held shall have a *Notice
of Case Management Conference Two* served with it.

6.   At least thirty days before the date set for Case Management Conference One, all counsel and self-
represented parties shall comply with the meet and confer obligations of California Rules of Court, rule 3.724.

7.   A *Case Management Statement* (Judicial Council form CM-110) shall be filed with the court and served on
all parties by each counsel by the 15th calendar day before the date set for Case Management Conference
One.

8.   At least one party demanding a jury on each side of a civil case must pay a nonrefundable fee of $150.00
on or before the initial case management conference or as otherwise provided by statute.

---

**NOTICE OF CMC ONE AND NOTICE OF ASSIGNMENT OF JUDGE**

0900-CV  REV. 01-01-2017                                                                 Page 1 of 2

EXHIBIT A

9.   At Case Management Conference One the court shall inform counsel and self-represented parties of the date, time and place for Case Management Conference Two and shall make any orders regarding what is expected that counsel and self-represented parties will accomplish in regard to the case before the filing of the Case Management Statement for Case Management Conference Two.

10.   Each counsel shall complete, file, and serve on all parties a completed Case Management Statement by the 15th calendar day before the date set for Case Management Conference Two.

11.   At any Case Management Conference, counsel shall be completely aware of all procedural, factual, and legal aspects of the case, and have full authority to discuss and resolve any issues that arise at the conference, including settlement of the case. This applies equally to both attorneys of record and specially-appearing counsel.

12.   The court may impose sanctions pursuant to Solano County Local Rules, rule 4.6, in the event that a Case Management Statement is not timely filed and/or served, or is not fully completed, or the requirements of Rule 4.6 are not met.

COUNSEL AND SELF-REPRESENTED PARTIES ARE OBLIGATED TO REVIEW AND COMPLY WITH THE LOCAL AND STATEWIDE RULES REGARDING CMC. LITIGATION. The rules are available at: www.courts.ca.gov/cms or http://www.courts.ca.gov/partners/juryselsolo.htm

## AFFIDAVIT OF SERVICE

I, the undersigned, declare under penalty of perjury that I am employed as a deputy clerk of the above-entitled court and am not a party to the within-entitled action, and that I served this notice as follows:

☑ I personally served the person named below on (date): _____ MAR 1 0 2017 _____ at

(time):

Name: _____ JOAQUIA FONTENOT - STURDEE SERVICES _____

☐ Party   ☐ Attorney of Record   ☑ Representative

I, JOAQUIA FONTENOT - STURDEE SERVICES, acknowledge receipt of a copy of this Notice of Case Management Conference One and Notice of Assignment of Judge for All Purposes.

Date: _____ MAR 1 0 2017 _____   Signature: _____

☐ I caused to be placed a true copy of this notice in an envelope which was then sealed and postage fully prepaid on the date shown below; that I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service; that the above stated document will be deposited in the Superior Court of California, County of Solano's outgoing mailbox for collection by county mail carriers on the date indicated. Said envelope was addressed to the attorneys for the parties, or the parties, as shown below:

☐ See attached for additional service addresses

Date: _____ MAR 1 0 2017 _____

Clerk of the Court
Superior Court of California, County of Solano

By: _____

Deputy Clerk

**NOTICE OF CMC ONE AND NOTICE OF ASSIGNMENT OF JUDGE**

0900-CV   REV. 01-01-2017                                         Page 2 of 2

EXHIBIT A



**SOLANO COUNTY SUPERIOR COURT**
**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

---

The judges of the Civil Division agree that parties should consider using Alternative Dispute Resolution (ADR) to settle their cases. To tell the court you will use ADR:
●Choose ADR on the Case Management Statement (CM-110) or
●File a Stipulation and Order - ADR or
●Agree to ADR at your first court appearance

Questions? Call (707) 207-7413 or go to *www.solano.courts.ca.gov/adr*

---

The following information about the ADR Programs available at the Solano Court is provided in addition to the information in the "Civil Mediation" brochure:

**Pro Bono Mediation Program:**

The Pro Bono Mediation panelists are the same mediators on the listing of mediators who provide their services without cost when ordered by the judge.

Request Pro Bono Mediation by entering the program name on the Case Management Statement or on the Stipulation and Order – ADR (Alternative Dispute Resolution). Attach a declaration to the Stipulation and Order – ADR describing why mediation services should be provided without costs to the parties.

**Private Mediation and Arbitration:**

Parties may select a mediator or arbitrator of their choice including someone not on the listings maintained by the court. If a private mediator, arbitrator or evaluator is selected who is not on the court maintained listing, your selection must be approved by the court.

**Fees:**

The court requires the fees for ADR to be split equally by the parties at the rate set by the mediator/arbitrator/evaluator unless otherwise ordered by the court. Fees are usually charged on an hourly basis. The court offers "no fee" mediation to parties who cannot afford to pay for mediation. A party may request "no fee mediation" at the Case Management Conference or by filing a "Stipulation and Order – Alternative Dispute Resolution" and attaching a declaration stating why mediation services should be provided at no cost to the parties.

Local Form 3906
Revised July 14, 2016

EXHIBIT A



**Helpful Early Neutral Case Evaluation Program:**

The Helpful Early Neutral Case Evaluation Program provides an opportunity for litigants to resolve their conflict at the early stages of their case. Litigants meet with a neutral evaluator, who as an experienced attorney with subject matter experience that relates to the specific case type, assists the litigants to reach a mutual resolution to their case.

The Helpful Early Neutral Case Evaluation Program may be appropriate when the parties want to participate in a non-adversary procedure.



SUPERIOR COURT OF CALIFORNIA, COUNTY OF SOLANO



**CIVIL MEDIATION CENTER**





Civil Mediation Center
Old Courthouse
580 Texas St.
Fairfield, CA 94533
(707) 207-7413
FAX (707) 425-4996

*DEDICATED TO PROVIDING ACCESS TO FAIR AND IMPARTIAL JUSTICE FOR ALL*

EXHIBIT A



## Introduction

Alternative Dispute Resolution (ADR) is a general term for a wide variety of dispute resolution processes that are alternative to litigation.  Types of ADR processes include mediation, arbitration and settlement conferences, among other forms.

## Advantages of ADR

ADR can have a number of advantages.

- ADR can save time.  A dispute can be resolved in a matter of months, even weeks, while litigation can take years.

- ADR can save money.  Attorney fees, court costs and expert fees can be reduced.

- ADR invites more participation.  Parties have more chances to express their interest and concerns instead of focusing exclusively on legal rights.

- ADR allows more control and flexibility.  Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

- ADR can reduce stress.  ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation.

- ADR can be more satisfying.  For all the above reasons, many people have reported a high degree of satisfaction with ADR.

## Main Form of ADR Offered by the Court

### Mediation

Mediation is an informal, confidential process in which a neutral person (the mediator) assists the parties in understanding their own interests, the interests of the other parties, and the  practical and legal realities of their dispute.  The mediator helps each side to explore options and arrive at a mutual acceptable resolution.  The mediator does not decide the dispute, the parties do.

Mediation may be appropriate when:  The parties want a non-adversary procedure; the parties have a continuing business or personal relationship; communication problems are interfering with a resolution; there is an emotional element involved; the parties are interested in an injunction, consent decree, or other form of equitable relief.

## Arbitration

Arbitration is normally an informal process in which a neutral person (the arbitrator) decides the dispute after hearing the evidence and arguments of the parties.  The parties can agree to binding or non-binding arbitration.  Binding arbitration is designed to give each side a resolution of their dispute when they cannot agree between themselves or with a mediator.  If the arbitration is non-binding, any party can reject the arbitrator's decision and request a trial.

Arbitration may be appropriate when: the action is for personal injury, property damage, breach of contract; when only monetary damage is sought; witness testimony under oath is desired; an advisory opinion is sought from an experienced litigator (if non-binding arbitration)

EXHIBIT A

Local Form 3905
March 7, 2011
mod April 25, 2012

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SOLANO

| | For Court Use Only: |
|---|---|
| **CASE NAME:** <br><br> Plaintiff <br><br> Defendant | |
| **STIPULATION AND ORDER - ALTERNATIVE DISPUTE RESOLUTION** | Case Number: |

**The parties and their attorneys stipulate that all claims in this action shall be submitted to:**

☐ Mediation
    ☐ No Fee Mediation     ☐ Civil Action Mediation Program (CAMP)
    ☐ Pro Bono                 CCP § 1775 et seq.
    ☐ Declaration RE: No Fee/Pro Bono request attached

☐ Arbitration
    ☐ Binding           ☐ HENCE-Helpful Early Neutral Case
    ☐ Non-Binding        Evaluation

                            ☐ Other ADR Stipulations attached

Dated: _____     Dated: _____

_____     _____
Name of Plaintiff                        Name of Defendant

_____     _____
Signature                             Signature

_____     _____
Name of Plaintiff's Attorney          Name of Defendant's Attorney

_____     _____
Signature                             Signature

**It is so ordered.**
It is also ordered _____

_____

Dated: _____     _____
                                 **Judge of the Superior Court**

Local Form 3905
March 7, 2011 mod April 25, 2012

EXHIBIT A