UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY PRUITT,<br><br>    Plaintiff,<br><br>    v.<br><br>GENENTECH, INC., a Delaware Corporation; and DOES 1-10, inclusive,<br><br>    Defendants. | No. 2:17-cv-00822-JAM-AC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT GENENTECH'S MOTION TO DISMISS & MOTION TO STRIKE** |

Plaintiff Timothy Pruitt brings a number of state and federal claims against Genentech, Inc., ("Genentech") and DOES 1-10 (collectively, "Defendants"). Genentech now moves to dismiss two of those claims, moves to strike Pruitt's injunctive relief request, and moves to strike all DOE defendants. Mot., ECF No. 4. Pruitt concedes striking DOE defendants, but opposes everything else. Opp'n, ECF No. 12. For reasons explained below, the Court GRANTS in part and DENIES in part Genentech's motion.[1]

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for July 11, 2017. In deciding this motion, the Court takes as true all well-pleaded facts in the operative complaint.

1

I. BACKGROUND

Pruitt sues Defendants for allegedly violating several state and federal employment laws. See generally Compl., ECF No. 1 (attached to Notice of Removal as Ex. A). He brings ten causes of action. The first three concern various Fair Employment and Housing Act ("FEHA") violations, including disability discrimination (claim one), race discrimination (claim two), and retaliation (claim three). See id. at 9-10. Pruitt also brings a California whistleblower claim (claim four). See id. at 11. He sues Defendants for two California Family Rights Act ("CFRA") violations—interference (claim five) and retaliation (claim six). See id. at 11-12. Pruitt also brings federal claims, suing Defendants for Federal and Medical Leave Act ("FMLA") interference (claim seven) and retaliation (claim eight). See id. at 12-13. Pruitt sues for wrongful termination in violation of public policy (claim nine). See id. at 13. And, finally, Pruitt sues for defamation (claim ten). See id. at 13-14.

Now before the Court is Genentech's motion to dismiss Pruitt's whistleblower and defamation claims, to strike Pruitt's injunctive relief request, and to strike references and allegations concerning DOE defendants. See generally Mot.

II. OPINION

A. Whistleblower Claim

Pruitt's whistleblower claim against Genentech alleges Genentech retaliated against him for alerting human resources ("HR") about Genentech employees' discriminatory conduct—specifically, that his supervisors Dan Williams and Steve Graeff discriminated against him. See id. ¶¶ 11, 13, 24.

Genentech moves to dismiss this claim for two reasons. First, to the extent Pruitt's claim arises from any failure to promote him, Genentech contends this is time barred. See Reply, ECF No. 14, at 1-3. Second, to the extent Pruitt's claim arises from his termination, Genentech argues Pruitt fails to state a claim. See Mot. at 3-4 Pruitt opposes Genentech's motion, arguing that the limitations period is 3 years, making his whistleblower claim timely. See Opp'n at 6.

1. Statute of Limitations

A plaintiff must file his Labor Code § 1102.5 claim within one year of the retaliatory act. See Delgado v. MillerCoors LLC, No. CV 16-5241 DMG (ASx), 2017 WL 1130165, at *4 (C.D. Cal. Mar. 16, 2017) (citing Wilden v. Cty. of Yuba, No. 2:11-cv-02246-JAM-GGH, 2012 WL 12526820 (E.D. Cal. Mar. 1, 2012). Because Pruitt seeks civil penalties, see Compl. at 14, the one-year statute of limitations applies, as this is an "action upon a statute for a penalty," Cal. Civ. Proc. Code § 340(a). See also Cal. Lab. Code § 1102.5(f). Pruitt alleges two bases for his whistleblower claim—failure to promote and termination. See Compl. ¶ 56. Each must fall within the one-year limitations period.

As to the failure-to-promote basis for Pruitt's whistleblower claim, it is time barred. Pruitt alleges Genentech failed to promote him in December 2015, see id. ¶¶ 20, 56, so he had until December 2016 to bring this claim. But he waited until March 10, 2017 to file suit, see id. at 1, more than one year after the alleged retaliatory act, rendering the claim time barred, see Delgado, 2017 WL 1130165 at *4.

To the extent Pruitt's whistleblower claim arises from his termination, it falls within the limitations period. Genentech terminated Pruitt on July 27, 2016, see Compl. ¶¶ 27, 56, so he had until July 27, 2017 to file this claim. He did so on March 10, 2017. See generally Compl. Yet Genentech maintains the allegations supporting this claim—conversations Pruitt had with HR—are too remote because they occurred several years before Pruitt filed this suit. See Mot. at 4, n.1. The Court rejects this argument, for the statute of limitations runs from the time of the alleged retaliatory act—not from the alleged protected activity. See Delgado, 2017 WL 1130165 at *5. Pruitt's termination on July 27, 2016 is the operative date.

In sum, to the extent Pruitt's whistleblower claim derives from any failure to promote, the Court finds it is time barred and dismisses it with prejudice. But, as to the termination basis for Pruitt's whistleblower claim, the Court finds it is timely.

### 2. Stating a California Whistleblower Claim

While Genentech's statute of limitations argument fails in part, Genentech contends that this claim should still be dismissed because Pruitt has not sufficiently stated a whistleblower claim. To do that, Pruitt "must show (1) [he] engaged in a protected activity, (2) [his] employer subjected [him] to an adverse employment action, and (3) there is a causal link between the two." Derby v. City of Pittsburg, No. 16-cv-05469-SI, 2017 WL 713322, at *11 (N.D. Cal. Feb. 23, 2017). Genentech contends Pruitt's claim is impermissibly vague. See Mot. at 3-4. Pruitt maintains his claim is sufficiently pled.

See Opp'n at 4-6. As discussed below, the Court agrees with Pruitt.

                        a.    Protected Activity

"To constitute a protected activity pursuant to section 1102.5, a disclosure must be 'to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance.'" Smiley v. Hologic, Inc., No. 16-cv-158-WQH-MDD, 2017 WL 1354787, at *9 (S.D. Cal. Apr. 12, 2017). HR representatives are persons of authority. See Evenfe v. Esalen Inst., No. 15-cv-05457-LHK, 2016 WL 3965167, at *4 (N.D. Cal. July 24, 2016) (concluding plaintiff engaged in protected activity when she told HR personnel "she was not being paid for her medical assistance work, in violation of Cal. Labor Code section 1194").

Genentech says the basis for Pruitt's whistleblower claim is unclear, highlighting Pruitt's failure to specify "who, when, and what he allegedly 'disclosed' to an individual covered by section 1102.5." See Mot. at 4. Pruitt disagrees, arguing he informed HR about being discriminated against and this violated federal and state law. See Opp'n at 5.

The Court agrees with Pruitt, but for slightly different reasons. He identifies several federal and state anti-discrimination and medical leave laws he claims Genentech violated. See Compl. ¶¶ 33-53 (FEHA), 60-73 (CFRA), 74-86 (FMLA). Pruitt also delineates the factual basis for his whistleblower claim. See, e.g., Compl. ¶ 11 ("Pruitt told Genentech's human resources representative . . . that he felt

Mr. Williams was holding him to a different standard based on his race."); ¶ 13 ("Pruitt expressed his concern to human resources that the performance review was in retaliation for his prior [race] discrimination complaint against Mr. Williams."); ¶ 24 ("In early June 2016, Mr. Pruitt complained to human resources that he was being discriminated against. [He] told the Senior Manager of Employee Relations that Mr. Graeff subjected his work to more scrutiny and held him to a higher standard than his white coworkers."). These allegations show Pruitt told HR about alleged FEHA race discrimination and retaliation violations.

In his opposition to this motion, Pruitt attempts to add additional legal bases for his whistleblower claim. See Opp'n at 5 (citing Title VII, CFRA, and FMLA). None of these bases appear in his complaint, which mentions only FEHA discrimination and retaliation violations; it says nothing about Pruitt informing HR about Genentech's alleged medical leave violations. Pruitt cannot now, in his opposition brief, add more legal bases for his whistleblower claim. See Arres v. City of Fresno, No. CV F 10-1628 LJO SMS, 2011 WL 284971, at *18 (E.D. Cal. Jan. 26, 2011) ("[A] complaint is judged based on its allegations, not new facts or claims raised in [a Rule 12(b)(6)] opposition.").

In short, the Court finds Pruitt engaged in protected activity, but only as to the alleged FEHA race discrimination and retaliation violations Pruitt reported to HR. The Title VII, CFRA, and FMLA violations Pruitt listed in his opposition brief cannot comprise the legal basis for his whistleblower claim. See Thomsen v. Sacramento Metro. Fire Dist., No. 2:09-

CV-01108 FCD/EFB, 2009 WL 8741960, at *16 (E.D. Cal. Oct. 20, 2009).

### b. Adverse Action

Pruitt sufficiently alleges an adverse action. He says Genentech terminated him, see Compl. ¶¶ 27, 56, and termination is an adverse employment action, see Ferretti v. Pfizer Inc., No. 11-CV-04486, 2013 WL 140088, at *10 (N.D. Cal. Jan. 10, 2013).

### c. Causal Link

That leaves the third and final element of a whistleblower claim: A causal link between protected activity and adverse action. See Derby, 2017 WL 713322 at *11. Genentech contends Pruitt cannot establish this connection because years passed between his 2012 reports to HR and his 2016 termination. See Reply at 2 n.2. Pruitt emphasizes he spoke to HR one month before Genentech terminated him, so he has alleged a sufficient causal connection. See Opp'n at 5.

The law supports Pruitt's position. "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.'" Smiley, 2017 WL 1354787 at *8. Pruitt has done just that. One month before Genentech terminated Pruitt, he, once again, told HR his managers were discriminating against him. See Compl. ¶¶ 24, 27. Genentech's reliance on Arkens does not alter this Court's conclusion: There, the court held that 14 months' time between protected activity and an

adverse action was too remote to establish a causal link, <u>Arkens v. Cty. of Sutter</u>, Civ. No. 2:16-951 WBS KJN, 2016 WL 5847036, at *16 (E.D. Cal. Oct. 6, 2016); here, only one month passed, <u>see</u> Compl. ¶¶ 24, 27.  Genentech cites no case showing one month is too remote.

Equally important, Genentech was well aware of Pruitt's reports to HR.  <u>See, e.g.</u>, Compl. ¶ 12 (after receiving reports from Pruitt that he was being racially discriminated against, an "[HR] employee directed [Dan] Williams to amend the performance counseling document").  This solidifies Pruitt's position, for "[e]ssential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." <u>Smiley</u>, 2017 WL 1354787 at *8.  Additionally, Williams attended the meeting when Graeff terminated Pruitt.  <u>See</u> Compl. ¶ 27. <u>See also Ferretti</u>, 2013 WL 140088 at *10 ("[I]t is sufficient that at least one of the persons responsible for making each adverse employment decision [knew] Plaintiff had engaged in protected activity.").

In sum, Pruitt sufficiently alleges protected activity, adverse action, and causation, putting Genentech on notice of the whistleblower claim against it.  The Court therefore denies Genentech's motion to dismiss Pruitt's § 1102.5 whistleblower claim, however, this claim arises only from Pruitt's termination (and not any alleged failure to promote) and only the alleged FEHA violations reported to HR—race discrimination and retaliation—comprise the basis for this claim.

  B. <u>Defamation Claim</u>

Pruitt also sues Genentech for defamation, contending

Genentech defamed him by saying he stole a sandwich. See Compl. at 8-9, 13-14. Genentech moves to dismiss this claim, arguing Pruitt fails to meet defamation's heightened pleading standard. See Mot. at 5-6. Pruitt asserts he need only pled the "substance of" the allegation and has done that. See Opp'n at 9.

To state a defamation claim, a plaintiff must show the defendant made a false and unprivileged publication to a third person that had a tendency to injure the plaintiff with respect to his occupation, office, profession, trade, or business. See Williams v. Salvation Army, No. 2:14-cv-06138-ODW(PJWx), 2014 WL 6879936, at *2 (C.D. Cal. Dec. 4, 2014) (citing Cal. Civ. Code §§ 44-47). "Under California law, the 'defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement.'" Jones v. Thyssenkrupp Elevator Corp., No. C-05-3539 EMC, 2006 WL 680553, at *5 (N.D. Cal. Mar. 14, 2006) (citation omitted). This means the complaint must reference "the speakers of the defamatory communications, the recipients, the timing, or the context in which they were made, sufficient to provide [the defendant] notice of the issues" to prepare a defense. See Jones, 2006 WL 680553 at *6 (citing *Okun v. Superior Court (Maple Properties)*, 29 Cal. 3d 442 (1981)).

Pruitt's complaint lacks the requisite specificity. For starters, the factual basis for his defamation claim is unclear. Pruitt cites two contexts in which Genentech allegedly made the defamatory comment: During a meeting with Graeff and Williams, see Compl. ¶ 26, and at some unknown time by some unidentified

employee to some other unidentified employees some time before Genentech terminated him, see id. ¶ 29.  Notwithstanding the confusion as to which context Pruitt's defamation claim is grounded upon, his complaint contains other fatal defects.  For instance, Pruitt makes conclusory allegations.  See id. ¶¶ 94-95 ("Defendant made this statement maliciously, out of hatred or ill will toward Plaintiff . . . . This statement was a substantial factor in causing harm to Plaintiff's trade, profession, occupation, and/or reputation.").  Conclusory allegations do not satisfy defamation's heightened pleading standard.  See Williams, 2014 WL 6879936 at *2.

Moreover, Pruitt's use of the phrase "on information and belief" raises a red flag:

> Where, as here, some of the allegations are qualified with the phrase and others are not, a reasonable inference arises that it is intended as caveat, to provide additional protection should plaintiff be unable to prove any of the factual allegations.  It thus creates a further inference that plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree.

Delphix v. Actifo, Inc., No. C 13-4613 RS, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014) (patent infringement action). Pruitt uses this phrase for his defamation claim, see Compl. ¶ 29, but not for any other claim.  Indeed, the key allegation, "[o]n information and belief . . . Defendant told several of its employees that it terminated Mr. Pruitt for stealing," raises questions: Who made the statement? Who heard it?  When?

Additionally a conditional privilege presumptively applies

to this claim. "Because an employer and its employees have a common interest in preserving morale and job efficiency, an employer's statements regarding the reasons for termination of another employee generally are privileged." Williams, 2014 WL 6879936 at *3 (citation omitted). "To defeat this conditional privilege, a plaintiff must specifically allege malice," meaning he "must allege detailed facts showing defendant's ill will towards him." Jones, 2006 WL 680553 at *6. Pruitt has not done so. Instead, he merely alleges "Defendant told several of its employees that it terminated Mr. Pruitt for stealing," Compl. ¶ 29, and adds the conclusory allegation that "Defendant made this statement maliciously, out of hatred or ill will toward [him]," Id. ¶ 94. This does not suffice.

In short, Pruitt fails to provide Genentech adequate "notice of the issues" to prepare a defense, and so fails to state a claim. Jones, 2006 WL 680553 at *6. This illustrates why defamation, a "historically unfavored" action, has a "more stringent" pleading standard. See id. Nevertheless, the Court is not convinced there are no set of facts upon which Pruitt could state a defamation claim and, so, dismisses it with leave to amend. See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

C. Injunctive Relief

Pruitt seeks injunctive relief, Compl. at 14, but Genentech asks this Court to strike the request, contending that Pruitt lacks Article III standing to make it, see Mot. at 6. Pruitt believes a recent California Supreme Court case gives him the requisite standing. See Opp'n at 10 (citing Harris v. City of

Santa Monica, 56 Cal. 4th 203 (2013)). "To have standing to bring a claim for relief, a plaintiff must show that [he] has (1) suffered an injury that (2) was caused by the defendant and (3) is likely to be redressed by the relief [he] seeks." Walsh v. Nevada Dep't of Human Res., 471 F.3d 1033, 1036-37 (9th Cir. 2006). The parties dispute whether Pruitt has met the redressability prong.

The Court concludes Pruitt has not. The Ninth Circuit makes clear a former employee lacks standing to seek injunctive relief when the complaint says nothing about the plaintiff's intent to return to work. See id. at 1037. See also Achal v. Gate Gourmet, Inc., 114 F. Supp. 3d 781, 818 (N.D. Cal. 2015) ("[A] former employee lacks standing to seek injunctive relief on an employment discrimination claim—at least where he or she is not seeking reinstatement—because the former employee 'would not likely benefit' from any such relief.") (citing Walsh, 471 F.3d at 1037).

Pruitt, however, argues that this Court should not read Walsh so broadly. He attempts to distinguish Walsh from the case here, arguing that Walsh is limited to ADA claims, whereas this case concerns FEHA claims, and so is more analogous to Harris. See Opp'n at 10.

Pruitt is mistaken. Harris simply says "a court may grant injunctive relief where appropriate to stop discriminatory practices." Id. at 234 (citation omitted). But "[t]he fact that FEHA allows a court to order injunctive relief does not alter the standing analysis." Achal, 114 F. Supp. 3d at 818. This makes sense, for the Ninth Circuit in Walsh "held that a

former employee lacks standing to seek injunctive relief on an employment discrimination claim, see id. (emphasis added), which encompasses both ADA and FEHA claims, as both are employment discrimination claims. Stated another way, for purposes of Article III standing, Pruitt's distinction between ADA and FEHA claims is a distinction without a difference. The Court therefore strikes Pruitt's injunctive relief request.

D. DOE Defendants

Pruitt also sues DOE defendants. See Compl. at 1. Genentech asks this Court to strike "references and allegations related to Doe defendants." See Mot. at 6. Pruitt does not oppose. See Opp'n at 11. The Court therefore strikes these defendants, dismissing them without prejudice.

III. ORDER

For the reasons set forth above, the Court GRANTS in part and DENIES in part Genentech's motion to dismiss and motion to strike.

If Pruitt elects to amend his complaint, he shall file his first amended complaint within twenty days from the date of this Order. No new causes of action may be included in the first amended complaint. Genentech's responsive pleading is due within twenty days thereafter.

But if Pruitt elects not to amend his complaint, Genentech shall file its answer to the complaint within thirty days from the date of this Order, and the case will proceed on the following remaining claims:

1. FEHA disability discrimination (claim one);
2. FEHA race discrimination (claim two);

3. FEHA retaliation (claim three);
4. § 1102.5 whistleblower claim, limited to Pruitt's termination after complaining to HR about Genentech's alleged FEHA race discrimination and retaliation violations (claim four);
5. CFRA interference (claim five);
6. CFRA retaliation (claim six);
7. FMLA interference (claim seven);
8. FMLA retaliation (claim eight); and
9. Wrongful termination in violation of public policy (claim nine).

IT IS SO ORDERED.

Dated: August 23, 2017

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE