LYNNE C. HERMLE (STATE BAR NO. 99779)
lchermle@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: 650 614 7400
Facsimile: 650 614 7401

JULIE A. TOTTEN (STATE BAR NO. 166470)
jatotten@orrick.com
LEO MONIZ (STATE BAR NO. 285571)
lmoniz@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, CA 95814-4497
Telephone: 916 447 9200
Facsimile: 916 329 4900

Attorneys for Defendant
GENENTECH, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY PRUITT,<br><br>        Plaintiff,<br><br>v.<br><br>GENENTECH, INC.; AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>        Defendants. | Case No. 2:17-CV-00822-JAM-AC<br><br>**DEFENDANT GENENTECH, INC.'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF DISCRIMINATION COMPLAINTS AND INVESTIGATIONS THEREOF**<br><br>Date: April 1, 2019<br>Time: 9:00 a.m.<br>Courtroom: 6, 14th floor<br>Judge: Hon. John A. Mendez<br><br>Date Action Filed: April 19, 2017<br>Trial Date: April 1, 2019 |

I.     **INTRODUCTION**

Plaintiff Timothy Pruitt had his chance to pursue his discrimination allegations. That time has passed, and Pruitt cannot surreptitiously re-litigate his discrimination claims by offering evidence of the details of his internal complaints or attacking the adequacy of Genentech's investigations into those complaints. Pruitt's only surviving claims are retaliation under the Fair Employment and Housing Act ("FEHA"), retaliation under California Labor Code section 1102.5, and derivative wrongful termination in violation of public policy. These claims are premised on Pruitt's allegation that Genentech terminated his employment because he complained to Employee Relations that he was being treated unfairly based on his race. *See* Compl. ¶¶ 50, 57, 89. While these claims require Pruitt to prove that he engaged in protected activity, as set forth below, Genentech does not dispute that Pruitt's discrimination complaints constitute protected activity under FEHA, Labor Code section 1102.5, and derivative wrongful termination. Consequently, evidence detailing the content of Pruitt's discrimination complaints or concerning Genentech's investigations into those complaints has no bearing on whether Genentech terminated Pruitt because he complained of discrimination. Thus, such evidence should be excluded as irrelevant, prejudicial, and cumulative.

II.    **RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

   A.    **The Court Granted Summary Judgment for Genentech on Discrimination, Leaving Only Pruitt's Retaliation Claims**

Pruitt originally sought to assert a claim for racial discrimination under FEHA as well as claims for retaliation under FEHA, retaliation under section 1102.5, and derivative wrongful termination in violation of public policy (together, the "retaliation claims"). The Court has since granted summary judgment in Genentech's favor, dismissing Pruitt's discrimination claim and leaving only the retaliation claims at issue. ECF No. 75. The retaliation claims allege that Genentech terminated Pruitt's employment in July 2016 because Pruitt complained to Employee Relations that he was being treated unfairly on the basis of race. *See* Compl. ¶¶ 50, 57, 89.

   B.    **Genentech Terminated Pruitt for Misconduct**

At various times between 2012 and the end of Pruitt's employment in July 2016, Pruitt made complaints of unfair treatment and/or race discrimination—first against his then-supervisor

1   Dan Williams in 2012-2013, and subsequently against his next supervisor Steve Graeff in 2016—
2   often after receiving performance feedback.  Compl. ¶¶ 11-13, 24.  Genentech investigated each
3   of Pruitt's complaints and found them to be unsubstantiated.

4         In 2016, Genentech learned of two acts of misconduct by Pruitt.  Genentech investigated
5   and determined that (1) despite repeated prior counseling about accurately reporting his time
6   worked, Pruitt reported his time as though he had worked a full eight hours on a day when he
7   only worked less than four-and-a-half hours, and (2) Pruitt took a sandwich from the cafeteria
8   without paying for it.  Genentech terminated Pruitt's employment on this basis in July 2016.
9   Compl. ¶ 27.  During this litigation, Pruitt has since admitted that he committed both underlying
10  acts for which Genentech terminated his employment (although he has now asserted various
11  excuses <u>he did not provide at the time of his termination</u>).

12  **III.   GENENTECH AGREES THAT PRUITT ENGAGED IN PROTECTED ACTIVITY**

13        Pruitt's retaliation and derivative wrongful termination claims each require him to prove
14  that he engaged in protected activity.  *See* Gov. Code § 12940(h); Labor Code § 1102.5(b)
15  (prohibiting retaliation for disclosing a violation of law to a person with authority over the
16  discloser, or to another employee who had authority to investigate, discover, or correct the
17  violation or noncompliance).  Here, Pruitt alleges that he engaged in protected activity by
18  complaining to Genentech's Employee Relations department that he was being discriminated
19  against based on his race.

20        As set forth in Genentech's trial brief, Genentech agrees and does not dispute that Pruitt
21  engaged in protected activity as required for FEHA retaliation and that he disclosed an alleged
22  violation of law as required for his California Labor Code section 1102.5(b) retaliation claim, and
23  Pruitt should be compelled to accept Genentech's stipulation to these facts.  *See, e.g., Holcomb v.*
24  *Aetna Life Ins. Co.*, 255 F.2d 577, 580 (10th Cir. 1958); *see also United States v. Am. Tel. & Tel.*
25  *Co.*, 83 F.R.D. 323, 332 n.18 (D.D.C. 1979) (courts may compel a plaintiff to accept defendant's
26  offer to stipulate to facts "concerning which there can be no real issue" because such stipulations
27  "simplify the issues and eliminate waste of time and money by avoiding unnecessary proof of
28  facts at the trial.").  Specifically, Genentech agrees to the following facts:

Pruitt complained to Employee Relations manager Karen Hall beginning in September 2012 and to Employee Relations manager Julia Myers beginning in January 2013 that Pruitt's then-supervisor, Dan Williams, was treating Pruitt unfairly and managing him differently than Williams managed other employees. In March 2013, Pruitt reported to ER employees Hall and/or Myers that he believed Williams was treating him differently based on his race and had retaliated against him for complaining about being treated differently by giving him a "Partially Met Expectations" rating on his performance evaluation for 2012 and denying him a raise, bonus, and stock award for his 2013 compensation.

In January 2016, Pruitt complained to Hall about Pruitt's new supervisor, Steve Graeff. Employee Relations manager Joe Rodriguez investigated the complaints about Graeff between May and July 2016. In June 2016, Pruitt again complained to Rodriguez that he believed Graeff was discriminating against him based on his race.

## IV.   ANALYSIS

Genentech agrees that Pruitt engaged in protected conduct, and therefore, evidence recounting Pruitt's discrimination complaints or the alleged conduct supposedly constituting discrimination, as well as evidence of Genentech's investigation into the alleged discrimination, must be excluded. Not only is such evidence irrelevant to the issue at trial—whether Genentech terminated Pruitt in retaliation for his complaint of discrimination—allowing it would be unfairly prejudicial to Genentech, likely to confuse or mislead the jury, and cumulative.

### A.   Evidence Detailing Pruitt's Discrimination Complaints or Genentech's Investigation Is Irrelevant and Must Be Excluded Under Rule 402

Evidence concerning the details of Pruitt's discrimination complaints, the underlying conduct supposedly constituting discrimination, and Genentech's investigation into Pruitt's complaints is not relevant to the claims or defenses at issue in this trial. The question for the jury is simply whether Genentech retaliated against Pruitt for making these complaints—not whether there was any truth to the complaints and not whether the complaints were sufficiently investigated. Thus, evidence of the alleged discrimination and Genentech's investigation into the same is irrelevant and inadmissible. Fed. R. Evid. 401(a), (b); 402.

Numerous courts have recognized this under similar circumstances. For example, in *Morris v. Washington Metropolitan Area Transit Authority*, plaintiff brought discrimination and retaliation claims, as well as a claim that he was fired for exercising his First Amendment right to criticize his employer's practice of race discrimination. 702 F.2d 1037, 1039 (D.C. Cir. 1983). Only the First Amendment claim went to trial. *Id.* at 1040. The plaintiff sought to offer evidence that he reasonably believed his discrimination complaints were true, which the court explained was "in essence a requirement that the plaintiff show his complaints to be speech falling within the protection of the First Amendment." *Id.* at 1043. However, this was not in dispute because the defendant "had already stipulated to the fact that 'the content of the plaintiff's complaints or alleged complaints regarding racial discrimination falls within the categories of speech protect by the First Amendment." *Id.* at 1043-44. Accordingly, the trial court excluded the evidence as irrelevant. The D.C. Circuit affirmed this decision, reasoning that "the stipulations entered into by the parties eliminated the need to adduce evidence on the question whether [the plaintiff's] speech was protected by the First Amendment. The purpose and effect of the stipulations was precisely to pretermit any inquiry into whether Morris was justified in voicing his complaints. *The defendant stipulated that the speech was 'protected,' and this was sufficient to dispose of the issue.*" *Id.* at 1044 (emphasis added).

Likewise, in *Mims v. Federal Express Corp.*, the Central District of California found that evidence relating solely to the plaintiff's dismissed discrimination claims was not relevant to the remaining retaliation claim, and thus was inadmissible. No. CV 13-03947-AB (SSX), 2015 WL 12711651 (C.D. Cal. Jan. 15, 2015). The court explained:

> Evidence that a particular supervisor discriminated against African Americans or women may be relevant to show 'discriminatory intent' or FedEx's knowledge that its employees were discriminating against and harassing individuals on the basis of their race or gender. But Mims' claims do not hinge on a 'discriminatory intent' or knowledge of discrimination—*they hinge upon a retaliatory intent animated by Mims January 2012 internal complaint.*

*Id.* at *8 (emphasis added). "Evidence may be excluded 'when its admission would lead to litigation of collateral issues, thereby creating a side issue which might distract the jury from the

1    main issues." *Id.* at *9 (quotations and citations omitted).

2    Similarly, in *Slaughter-Payne v. Shinseki*, the court recognized that a plaintiff could not
3    "referenc[e] or introduce[e] evidence relevant *solely* to her now-dismissed race discrimination
4    claims." No. CV-03-2300-PHX-ROS, 2011 WL 13141500, at *1 (D. Ariz. June 9, 2011), *aff'd*,
5    522 F. App'x 409 (9th Cir. 2013). Thus, the court found that the plaintiff could not "refer to
6    Defendant's alleged failure to promote her based on her race," because such evidence *"is not
7    relevant to the remaining retaliation claim."* *Id.* (emphasis added). The Ninth Circuit likewise
8    observed in *Smith v. Aufderheide* that evidence "concerning the truth of the discriminatory acts of
9    which [the plaintiff] complained" was properly excluded because it was not relevant to the
10   plaintiff's retaliation claim. 371 F. App'x 825, 828 (9th Cir. 2010).

11   Here, neither the details of Pruitt's complaints, the alleged conduct underlying the
12   complaints, nor Genentech's investigation into Pruitt's complaints has any tendency to make a
13   fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid.
14   401. Because Genentech agrees that Pruitt engaged in protected activity for purposes of FEHA
15   and section 1102.5, any evidence of the details of Pruitt's complaints, the alleged conduct
16   underlying the complaints, or the investigation into Pruitt's complaints beyond the basic facts that
17   Pruitt complained to Employee Relations of race discrimination by Williams and then Graeff, the
18   dates of the complaints, the persons who investigated the complaints, and the ultimate outcome of
19   Genentech's investigations is not relevant to whether Genentech retaliated against Pruitt and,
20   therefore, must be excluded. Fed. R. Evid. 401, 402.

21   **B.    Even if This Evidence Were Relevant or Otherwise Admissible, It Must Be
22           Excluded Under Rule 403**

23   Even if the Court finds this evidence is relevant or otherwise admissible, it should
24   nonetheless be excluded under Rule 403 because it is highly prejudicial to Genentech, would
25   confuse and mislead the jury, and would cause a significant waste of time. Fed. R. Evid. 403.
26   Numerous courts have recognized that even if evidence relating to a plaintiff's dismissed
27   discrimination claims is otherwise admissible, it should be excluded for precisely these reasons.
28   For example, in *Easley v. American Greetings Corp.*, the Eighth Circuit affirmed the

1  district court's decision to exclude "specific testimony regarding [her former supervisor's]
2  harassment of [the plaintiff]" under Rule 403 because it would be needless cumulative evidence.
3  158 F.3d 974, 976 (8th Cir. 1998).  "[T]he jury was told generally of the sexual harassment, but
4  the plaintiff was not permitted to go into a blow-by-blow account of Ward's misconduct.  It was
5  undisputed, and the jury was informed, that the plaintiff had been sexually harassed by her former
6  supervisor . . . ."  *Id.*  Likewise, the court in *Harvey v. District of Columbia* accepted a
7  defendant's stipulation that the plaintiff's activity was protected, and determined that, as a result
8  of the stipulation, "the jury should be informed generally about the plaintiff's prior allegations of
9  sexual harassment, but not about the specific events underlying the same.  *Rule 403 of the*
10  *Federal Rules of Evidence mandates such a procedure.*  Thus, at trial, the jury shall be informed
11  of the nature of the plaintiff's complaints—i.e., they were complaints about sexual harassment—
12  but not about the details underlying those complaints."  949 F. Supp. 874, 876–77 (D.D.C. 1996).
13      Numerous other courts have reached the same conclusion.  *See, e.g.*, *Perry v. Ala.*
14  *Alcoholic Bev. Control Bd.*, No. 2:11 CV 464, 2017 WL 8778820, at *2 (M.D. Ala. Nov. 16,
15  2017) (finding that "evidence of the basis for [the plaintiff's] dismissed claims . . . could be
16  relevant to whether she had a good faith belief that discrimination occurred.  But it also has the
17  potential to confuse the issues before the jury by inviting them to reconsider the merits of the
18  dismissed claims.  In light of [the defendant's] proposed stipulation, allowing [the plaintiff] to
19  present this evidence would be both unnecessary and unfairly prejudicial under Federal Rule of
20  Evidence 403.  The Court therefore accepts [the defendant's] stipulation as to . . . protected
21  conduct . . . and will instruct the jury accordingly."); *McCune v. Graco Children's Prod., Inc.*,
22  No. 5:09-CV-107, 2011 WL 13217898, at *2 (E.D. Tex. Aug. 8, 2011) (where plaintiffs
23  stipulated to cause of accident, evidence of plaintiff's "cell phone use prior to the collision would
24  be cumulative and would unfairly prejudice the [p]laintiffs.  Accordingly, testimony and evidence
25  regarding any alleged cell phone use by Mrs. McCune, how distracting cell phone use is, how
26  Mrs. McCune was driving in the minutes and hours prior to the crash, or the reasons or
27  motivations that may have led to her being distracted is cumulative, prejudicial, and inadmissible
28  under Fed. R. Evid. 402 and 403."); *Finney v. Bibb Cty. Pub. Sch.*, No. 5:02-CV-468 (DF), 2005

WL 8165543, at *4 (M.D. Ga. Oct. 5, 2005) (accepting the defendant's stipulation that the plaintiff's EEOC complaints were protected activities and finding that evidence beyond the fact of the complaints "would be irrelevant to the current matter before the Court, could potentially constitute unfair prejudice against Defendant and thus should be excluded").

## V.     CONCLUSION

For the reasons set forth above, Genentech respectfully requests that the Court accept its proffered agreed facts, and pursuant to Federal Rules of Evidence 401, 402, and 403, exclude all evidence of the details of Pruitt's complaints, the alleged conduct underlying the complaints, and Genentech's investigation into Pruitt's complaints beyond the basic facts that Pruitt complained to Genentech's Employee Relations department of race discrimination by Williams and then Graeff, the dates of the complaints, the persons who investigated the complaints, and the ultimate outcome.

Dated: March 22, 2019

LYNNE C. HERMLE
JULIE A. TOTTEN
LEO MONIZ
Orrick, Herrington & Sutcliffe LLP

By: _____/s/ Lynne C. Hermle_____
LYNNE C. HERMLE
Attorneys for Defendant
GENENTECH, INC.