1

LYNNE C. HERMLE (STATE BAR NO. 99779)
lchermle@orrick.com

2

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road

3

Menlo Park, CA  94025-1015
Telephone:     650 614 7400

4

Facsimile:     650 614 7401

5

JULIE A. TOTTEN (STATE BAR NO. 166470)
jatotten@orrick.com

6

LEO MONIZ (STATE BAR NO. 285571)
lmoniz@orrick.com

7

ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000

8

Sacramento, CA  95814-4497
Telephone:     916 447 9200

9

Facsimile:     916 329 4900

10

Attorneys for Defendant
GENENTECH, INC.

11

UNITED STATES DISTRICT COURT

12

EASTERN DISTRICT OF CALIFORNIA

13

14

15

TIMOTHY PRUITT,

Plaintiff,

16

v.

17

GENENTECH, INC.; AND DOES 1
THROUGH 10, INCLUSIVE,

18

Defendants.

19

Case No. 2:17-CV-00822-JAM-AC

**DEFENDANT GENENTECH, INC.'S
MOTION IN LIMINE NO. 3 TO
EXCLUDE EXHIBIT 93'S
MISLEADING, IRRELEVANT STILL-
FRAME IMAGES**

Date:          April 1, 2019
Time:          9:00 a.m.
Courtroom: 6, 14th floor
Judge:         Hon. John A. Mendez

Date Action Filed:  April 19, 2017
Trial Date:  April 1, 2019

20

21

22

23

24

25

26

27

28

4124-8794-1147.2

# I.     INTRODUCTION¶

Fearing the age-old idiom of "seeing is believing," Plaintiff Timothy Pruitt seeks to misguide the jury by introducing as Exhibit 93 a series misleading, unauthenticated, and irrelevant still-frames of a surveillance video that—when played in full—shows Pruitt leaving the Genentech cafeteria without paying for his food and supervisor Steve Graeff getting in the sandwich line.  But Pruitt's still-frames show nothing of the sort.  Instead, they are carefully cherry-picked to give the incomplete and misleading appearance that Graeff was somehow staking out Pruitt's every move.  These still-frame images are inadmissible for multiple reasons.

Aside from the fact that there is no indication of who or how the stills were created or who could possibly authenticate them, the stills are wholly irrelevant.  They merely show Graeff milling about the cafeteria and have no tendency to make it more or less likely that Genentech fired Pruitt because Pruitt complained of discrimination.  Rather, the only conceivable aim in presenting these stills is to strip all context from the video to convince the jury that Graeff was surveilling Pruitt.  The video tells a totally different story.  And, in any event, whether Graeff was following Pruitt has no bearing on any element in this case.  Thus, any probative value is substantially outweighed by the risk of prejudice, confusion of issues, and waste of time.

Moreover, given that the video exists and is fully available to Pruitt, the best evidence rule and the rule of completeness make it wholly improper for Pruitt to introduce the stills.

For each of these reasons, the proposed still-frames must be excluded.

# II.     RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

## A.     The Court Granted Summary Judgment for Genentech on Discrimination, Leaving Only Pruitt's Retaliation Claims

Pruitt originally sought to assert a claim for racial discrimination under FEHA as well as claims for retaliation under FEHA, retaliation under section 1102.5, and derivative wrongful termination in violation of public policy (together, the "retaliation claims").  The Court has since granted partial summary judgment, dismissing Pruitt's discrimination claim and leaving only the retaliation claims at issue.  ECF No. 75.  While the Complaint alleges that, after becoming Pruitt's supervisor in July 2015, Steve Graeff "[a]lmost immediately" began "closely scrutinizing" Pruitt's work more than he did for Pruitt's white coworkers, Pruitt nowhere alleges

- 2 -

1   that the purported scrutiny was in retaliation for Pruitt making discrimination complaints.  *See*

2   Compl. ¶¶ 19, 23, 24.  The retaliation claims allege that Genentech terminated Pruitt's

3   employment in July 2016 because Pruitt complained to Employee Relations that he was being

4   treated unfairly on the basis of race.  *See* Compl. ¶¶ 50, 57, 89.

5       Genentech received Pruitt's Exhibit 93 on May 21, 2019, the day before filing this motion.

6       **B.      Genentech Terminated Pruitt for Misconduct**

7       At various times between 2012 and the end of Pruitt's employment in July 2016, Pruitt

8   made complaints of race discrimination—first against his then-supervisor Dan Williams in 2012-

9   2013, and later against his next supervisor Steve Graeff in 2016—often following performance

10  feedback or a review.  Compl. ¶¶ 11-13, 24.  Pruitt's sole complaint about Graeff occurred long

11  after Graeff allegedly began scrutinizing Pruitt's work, and the basis of that complaint was the

12  supposed heightened scrutiny.  Genentech investigated each of Pruitt's complaints and found

13  them to be unsubstantiated.

14      In mid-2016, Genentech learned of two acts of misconduct by Pruitt—the latter of which

15  was captured on the video surveillance from which it appears (but is unclear) the still-frames were

16  created.  Genentech investigated and determined that (1) despite being counseled about accurately

17  reporting time-worked, Pruitt reported his time as though he had worked a full eight-hour day

18  when he only worked less than four and a half hours, and (2) Pruitt took a sandwich from the

19  cafeteria without paying for it.  Genentech terminated Pruitt's employment on this basis in July

20  2016.  Compl. ¶ 27.  During this litigation, Pruitt has since admitted that he committed both

21  underlying acts for which Genentech terminated his employment—i.e., reporting time as though

22  he put in a full day's work when in fact he took a long lunch and went home early, and not going

23  to the cash register or paying for food he obtained from the cafeteria on July 21, 2016 (although

24  he now asserts various excuses he did not provide at the time of his termination).

25  **III.   ANALYSIS**

26      **A.      The Still-Frames Lack Authentication**

27      Pruitt has offered no information as to where these stills came from, how they were

28  created, or who created them.  Authentication is not optional.  It is a "condition precedent to

- 3 -

1    admissibility," that is only satisfied by "evidence sufficient to support a finding that the matter in

2    question is what its proponent claims." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir.

3    2002) (quoting Fed. R. Evid. 901(a)) (footnotes omitted).  That is because authentication is a

4    special aspect of relevancy concerned with establishing the genuineness of evidence.  *Id.* (citing

5    Fed.R.Evid. 901(a) advisory committee's note).  Yet, it is entirely unclear—and, indeed, difficult

6    to conceive—how or whether Pruitt intends to authenticate the still-frames he seeks to introduce.

7    Genentech is not aware of any witness on Pruitt's list who is qualified to manipulate a video in

8    such way or testify as to how the still-frames were created and whether, once created, they were

9    doctored in any way.  What is clear at this time, however, is that the still-frames lack any

10   authentication and, therefore, must be excluded.

11            **B.    Pruitt's Cherry-Picked Still-Frames Are Wholly Irrelevant**

12           These stills are yet another effort to relitigate Pruitt's dismissed discrimination claim and

13   have no bearing on the claims or defenses at issue.  The only conceivable purpose for presenting

14   these select still-frames is to imply that Graeff was "surveilling" Pruitt on the day in which Pruitt

15   took the sandwich from the cafeteria.  Not only is this implication not true, but the obvious

16   message is that Graeff somehow had it out for Pruitt or was otherwise subjecting Pruitt to

17   heightened scrutiny.  But this could only be relevant only to Pruitt's dismissed discrimination

18   claim, as he did not exhaust or plead surveillance or heightened scrutiny as a basis for retaliation

19   (*see* the parties' separate motion in limine briefings regarding alleged heightened scrutiny).

20           To be admissible, evidence must be relevant.  Fed. R. Evid. 402.  Relevant evidence has a

21   tendency to make a fact of consequence in determining the action more or less probable than it

22   would be without the evidence.  Fed. R. Evid. 401(a), (b).  Evidence of Graeff purportedly

23   following Pruitt does not meet this standard.  Indeed, Pruitt only has two claims: retaliation

24   (under FEHA and Labor Code Section 1102.5) and a derivative wrongful termination claim.  The

25   stills and Pruitt's anticipated arguments thereon are irrelevant to each.  Whether Graeff was

26   following Pruitt (he wasn't) has no bearing on the key question of:  Did Genentech terminate

27   Pruitt's employment because Pruitt complained of discrimination?  Thus, Pruitt's stills are

28   irrelevant and inadmissible.

1

**C.      Completeness and The Best Evidence Rule Require Excluding Still-Frames**

2       Pruitt seeks to substitute the best evidence (the surveillance video in whole) with the best

3   evidence *for his case* (incomplete and misleading still-frames of unknown creation).  That is,

4   rather than play the actual surveillance video—which shows the complete picture, is relevant to

5   the claims, and does not suffer authentication defects—Pruitt seeks to distort reality by instead

6   offering incomplete snapshots.  This is precisely what the Federal Rules of Evidence prohibit.

7   *See* Fed. R. Evid. 106; Fed. R. Evid. 1001-1004.

8       The best evidence rule provides that the original of a "writing, recording, or photograph"

9   is required to prove the contents thereof.  Fed. R. Evid. 1002.  An original is the writing or

10  recording itself—not some later-created fragment of the writing or recording.  *See* Fed. R. Evid.

11  1001(3).  The purpose of the best evidence rule is to prevent inaccuracy and fraud when showing

12  the contents of a recording.  *See* Fed. R. Evid. 1002, Adv. Comm. Notes.  Here, the surveillance

13  video is the indisputable original and is fully available to Pruitt.  There is no exception to the best

14  evidence rule that would permit him to offer later-created stills of the video, particularly given

15  their unknown origin and lack of authentication.  Moreover, permitting Pruitt to offer the

16  nonoriginal still-frames will create an inaccurate picture for the jury absent the context that the

17  full video provides—i.e., that Graeff was in the cafeteria for lunch, not to stalk Pruitt.

18      Federal Rule of Evidence 106 also favors admitting a whole recording over a partial

19  recording.  Indeed, Rule 106, which codified the common law rule of completeness, was

20  specifically crafted "to avert 'misunderstanding or distortion' caused by introduction of only part

21  of a document." *U.S. v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) (citing *Beech Aircraft Corp.*

22  *v. Rainey*, 488 U.S. 153, 172 (1988)).  Misunderstanding and distortion are exactly what will

23  happen if Pruitt is allowed to present the still-frames he (or his counsel or someone) created.

24      Thus, the best evidence rule and rule of completeness demand that Pruitt's still-frames be

25  excluded.

26      **D.      Even if The Stills Were Relevant or Otherwise Admissible, They Must Be Excluded Under Rule 403**

27      Any miniscule probative value in the cherry-picked still-frames is substantially

28

1    outweighed by the risk of prejudice to Genentech and the substantial danger that they will confuse

2    the issues, mislead the jury, and necessitate undue consumption of time.  Specifically, the still-

3    frames paint an incomplete and misleading picture that Graeff was "following" Pruitt when Pruitt

4    took the sandwich—a picture clearly erased when the video is viewed in full.  Indeed, the video

5    shows Pruitt and Graeff in the cafeteria, Pruitt taking a sandwich without paying, Graeff noticing

6    Pruitt taking a sandwich and then Graeff getting in the sandwich station line himself.  What is

7    clear from the video and wholly absent from the stills is that Graeff was simply there for lunch—

8    just like the other cafeteria-goers.  Pruitt's aim is clear: make Graeff look like the bad guy who

9    "had it out for" Pruitt.  This is nothing more than yet another piece of Pruitt's campaign to

10   impugn Genentech and its employees.

11         Allowing Pruitt to introduce the stills also would confuse the issue and mislead the jury by

12   implying that it is Graeff who is on trial and suggesting that the real inquiry is whether Graeff

13   was following Pruitt—which is not relevant (and which is not true).  Moreover, the still-frames

14   are entirely cumulative of the video and therefore will only waste time.

15         Accordingly, pursuant to Federal Rule of Evidence 403, the still-frames should be

16   excluded.

17   **IV.    CONCLUSION**

18         For the reasons set forth above, Genentech respectfully requests that the Court exclude the

19   still-frames that are listed as Pruitt's Exhibit 93.

20   Dated: March 22, 2019                          LYNNE C. HERMLE
                                                    JULIE A. TOTTEN
21                                                  LEO MONIZ
                                                    Orrick, Herrington & Sutcliffe LLP
22

23                                                  By: _____ */s/ Lynne C. Hermle*_____
                                                            LYNNE C. HERMLE
24                                                       Attorneys for Defendant
                                                          GENENTECH, INC.
25

26

27

28

4124-8794-1147.2                          - 6 -          GENENTECH, INC.'S MOTION IN LIMINE NO. 3
                                                         CASE NO. 2:17-CV-00822-JAM-AC